IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-MC-00005-RN

| | |
|---|---|
| *In re:* **Worldwide Language Resources, LLC** | Order |

The Plaintiffs in a qui tam matter pending in the District of Maryland ask this court to compel WorldWide Language Resources, LLC, a Fayetteville, North Carolina-based company, to respond to their subpoena. The subpoena seeks documents about an allegedly fraudulent relationship between a defendant in the Maryland action, Shee Atika Languages, LLC, and WWLR. No formal allegations have been made about this relationship. In fact, the Second Amended Complaint neither mentions nor alludes to WWLR.

The relators have not established the potential relevance of the information sought given the claims at issue in the case. And WWLR has shown that compliance with the subpoena would be massively burdensome and disproportionate to the needs of the case. So the court will deny the motion.

I.  **Background**

This motion arises from a qui tam action pending in the District of Maryland: *United States ex rel. Fadlalla* v. *Dyncorp Int'l et al.*, Civ. No. PX–15–1806 (D. Md. filed June 19, 2015). In that case, the relators allege that a government contractor, Global Linguist Solutions, LLC, and some of its subcontractors defrauded the United States Government in connection with the bidding on and performance of a contract to provide linguist services to the military. Second Am. Compl., D.E. 6–3 ¶¶ 7, 8. The relators worked as linguists for GLS under the contract. *Id.* ¶ 5. They state that GLS won the bid because of the percentage of the contract it proposed to

subcontract to small business. *Id.* ¶ 116. But allegedly GLS's subcontracting plan was a sham and GLS intended to and did perform nearly all the work itself. *Id.* ¶¶ 117, 118, 120.

The subpoena at issue relates to Defendant Shee Atika Languages, LLC, a subcontractor that allegedly participated in this scheme. The relators seek documents from WWLR, a linguist subcontractor, related to the bidding on and performance of the contract; WWLR states it has produced these documents. D.E. 2–3; Resp. to Motion to Compel, D.E. 6 at 7. The subpoena also seeks documents from WWLR related to the formation of SAL and all financial, staffing, and other business arrangements made between SAL, WWLR, WMAS, and Larry Costa. Subpoena, D.E. 2–3 at 5.

Neither WWLR nor Larry Costa are parties to the case. Nor are they mentioned in the Second Amended Complaint. But the relators believe they are entitled to these documents based on factual allegations they make for first time in their motion to compel. They state that WWLR's owner, Larry Costa, partnered with the Shee Atika Tribe to form SAL to benefit from preferential treatment that Alaska Native Corporations and small businesses get in bidding on government contracts. Mem. in Supp. of Mot. to Compel, D.E. 2 at 3. The relators believe that WWLR was one of the subcontractors on the bid and that Costa traded WWLR's share of the contract with SAL to increase the percentage that would be subcontracted to small business, making the bid more attractive. *Id.* at 3–4. WWLR then allegedly transferred its own employees to SAL so SAL could perform the contract. *Id.* at 4.

Because the relators did not make any of these allegations in the Second Amended Complaint, WWLR withholds these documents because they are not relevant to the issues alleged in the complaint. Thus the relators have asked the court to compel WWLR to produce these documents. D.E. 1.

2

## II. Discussion

WWLR believes the relators set forth new theories of liability in discovery unrelated to the allegations made in the Second Amended Complaint. It views this subpoena as an improper attempt to obtain information to use to formulate new claims against the parties or bring new causes of actions against others. According to WWLR, the only theory of liability alleged is that the small business subcontractors were so dominated by GLS in the performance of the contract that they lost their small business status by becoming affiliates of GLS. *See* Second Am. Compl. ¶ 118.

The relators, however, view their own allegations more broadly. Their position is that the Second Amended Complaint alleges that the parties defrauded the government through their lies about the legitimacy of their small business subcontractors. Mem. in Supp. of Mot. to Compel, D.E. 2 at 8. They believe that while the fraud may have more layers than originally alleged, it is not "different fraud." *Id.*

So the issue is whether the relators can obtain discovery from a non-party about an alternative theory of fraud—that SAL was an affiliate of or controlled by large businesses *other than GLS*, such as by WWLR—when no such allegation has been made in the complaint. After considering the relevance and proportionality of the requested documents, the court concludes they cannot.

### A. Legal Standard

The Federal Rules permit parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In assessing proportionality, the parties should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

3

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* And the court must limit discovery that is "unreasonably cumulative or duplicative; or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.* 26(b)(C).

The relators believe they are entitled to these documents because courts generally view the scope of relevance under Rule 26 broadly. But in the context of qui tam False Claims Act cases, court have been reluctant to permit discovery requests that go beyond the scope of the allegations because of the "high risk for discovery to outsize significantly its worth and impose unfair burden and expense, and to be used as the proverbial fishing expedition." *U.S. ex rel. McCartor* v. *Rolls-Royce Corp.*, No. 1:08-CV-00133-WTL, 2013 WL 5348536, at *1 (S.D. Ind. Sept. 24, 2013). This is particularly the case when discovery sought pertains to conduct that has not been specifically alleged in the complaint. *See United States ex rel. Spay* v. *CVS Caremark Corp.*, No. 09–4672, 2013 WL: 4525226, at *9 (E.D. Pa. Aug. 27, 2013) (limiting discovery on relevance grounds where Plaintiff has not named the relevant entities or made specific allegations of false claims submitted by such entities in the Amended Complaint); *United States ex rel. Holland* v. *DaVita, Inc.*, No. 6:17-CV-1592-Orl-37GJLK, 2020 WL 10700153, at *3 (M.D. Fla. Dec. 11, 2020) (prohibiting discovery into additional alleged fraudulent practices where there are no specific allegations in the SAC about this conduct as required by Rule 9(b) and limiting discovery to 2011–2019 because relators provided no specific allegations establishing the relevance of pre-2011 documents).

For example, the relators in *United States ex rel. Adams* v. *Remain at Home Senior Care, LLC*, sought discovery about the relationship between the defendant and two non-parties because

4

it was relevant to discovering the extent of the fraud alleged. 2021 WL 3285300, at *3 (D.S.C. Aug 2, 2021). The defendant argued that this information was not within the scope of the claims and that the relators were merely fishing for facts to add claims or parties. *Id.* The court found that the relators had not shown how the third parties related to the allegations in the case and that the information sought was not relevant to the claims. *Id.* at *4. It also noted that although the Amended Complaint contained "sweeping conclusory allegations," it did not even reference these non-parties. *Id.* The court also limited the scope of plaintiffs' RFPs to the allegations about the specific patients identified in the Amended Complaint. *Id.* at *7. The relators also sought records about the defendant's financial relationships, agreements, and communications with non-parties. *Id.* The defendants objected to these requests on relevance grounds because Plaintiffs have not made specific allegations of fraudulent conduct pertaining to these third parties. *Id.* The court agreed with the defendant that the requests fell outside the scope of the claims. *Id.*

### A. Documents Related to the Formation of SAL

The court will first address the category of documents related to the formation of SAL. The Second Amended Complaint does not allege anything about the formation of SAL. Nor does it allege that GLS played a role in SAL's formation. The specific wrongdoing alleged is that GLS "usurped" the independence of the small businesses and "so vitiated [their] capabilities . . . that these entities were converted into GLS affiliates and lost their" status as bona fide small businesses. D.E. 6–3, ¶¶ 117, 118.

SAL was formed in 2005, almost a year before the contract was put out to bid and more than two years before GLS won the bid. Ex. C., SAL Articles of Organization, D.E. 6–5; D.E. 6–3, ¶¶ 91, 92. So information about SAL's formation seems to have no bearing on whether GLS "usurped" SAL's independence during the performance of the contract or whether SAL was later

5

"converted" into a GLS affiliate. Here, the dispute mirrors that in *Adams*: the relators seek discovery about a defendant's relationship with a third party perhaps to try to find additional misconduct. As WWLR points out, this discovery only furthers a new theory of wrongdoing: that SAL lost its status as a small business through its relationship with WWLR or Costa. Since this theory is not pled in the SAC, these documents are not relevant to the claims.

In the alternative, the court denies the motion as to these documents on proportionality grounds. WWLR is not a party to the litigation. SAL is. Given that the relators have successfully served discovery on SAL and SAL has produced about 300,000 pages of documents, there seems to be no merit to the relator's argument that SAL's dissolution necessitates this production from WWLR. And the information sought from WWLR about SAL is largely duplicative of SAL's production. Though the relators claim that "certain emails or other documents may no longer exist in [SAL's] possession," they have not explained why SAL's production would be missing documents or what documents might be missing. D.E. 2 at 4.

Finally, WWLR has provided a declaration from its Director of IT explaining that to comply with the subpoena would require thousands if not tens of thousands of hours of work. Decl. of Gene Battistini, D.E. 6–1 ¶ 5. And because of the sensitive subject matter of the documents, WWLR would incur additional cost and burden because it would first have to clear the production with the United States Special Operations Command. *Id.* ¶ 5. So responding to the subpoena would be hugely burdensome and expensive for WWLR.

Given the parties' relative access to the information, the unimportance of the discovery to resolving the issues, the burden and expense to WWLR, and the relator's ability to obtain the requested information from a party in the case, the court will deny the motion.

### B. Documents About Agreements and Relationship between SAL, WWLR, and Costa

The second category of documents at issue includes documents about agreements and the relationship between SAL, WWLR, and Costa. The relators have alleged no wrongdoing between SAL, WWLR, and Costa in their Second Amended Complaint. Nor are WWLR or Costa mentioned at all. Though the relators apparently believe some wrongdoing occurred between WWLR and SAL that impacted the legitimacy of SAL's small business status, this allegation is made only in the accompanying memorandum to the relator's motion to compel. The theory of fraud pled is that the agreements between the small businesses and GLS "so vitiated the capabilities of the Small Business Defendants that these entities were converted into GLS affiliates and lost their eligibility to be considered as *bona fide* independent small business entities." D.E. 6–3 ¶ 118. The alleged fraudulent relationship is between GLS and its subcontractors. So even if it is true that SAL were not a bona fide small business from the start because of its relationship with WWLR, this would not be relevant to whether GLS "usurped" SAL's independence during the performance of the contract.

And again, the relators have successfully obtained SAL's own records from SAL. So given the unimportance of these documents relative to the issues in the case, the relator's ability to obtain these documents from a party to the case, and the expense and burden to WWLR to produce this information, the court will deny the motion as to these documents too.

### III. Conclusion

The relator's motion to compel is denied. D.E. 1. Each party will bear their own costs.

Dated: July 5, 2022

*Robert T. Numbers II*
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE